# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| THE DOW CHEMICAL CO., and DOW BRASIL INDUSTRIA E COMERCIO DE PRODUTOS QUIMICOS, LTDA., <br><br> Plaintiffs, <br><br> v. <br><br> CITIC AGRI INVESTMENT CO., LIMITED, LP HIGH TECH HOLDING LTDA, LONGPING HIGH-TECH SEMENTES & BIOTECNOLOGIA, LTDA., LONGPING HIGH-TECH BIOTECNOLOGIA LTDA., AMAZON AGRI BIOTECH LUX S.A.R.L, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )   **C.A. No. N22C-08-002** <br>        **PRW CCLD** |

Submitted: December 8, 2023
Decided: January 2, 2024

*Upon Defendants' Motion to Dismiss,*
**GRANTED.**

## MEMORANDUM OPINION AND ORDER

Chad S.C. Stover, Esquire, BARNES & THORNBURG LLP, Wilmington, Delaware, Michael T. Williams, Esquire, Judith Pace Youngman, Esquire, WHEELER TRIGG O'DONNELL LLP, Denver, Colorado, *Attorneys for Plaintiffs*.

Alessandra Glorioso, Esquire, DORSEY & WHITNEY LLP, Wilmington, Delaware, Daniel J. Brown, Esquire, Jack Huerter, Esquire, DORSEY & WHITNEY LLP, Minneapolis, Minnesota, *Attorneys for Defendants*.


**WALLACE, J.**

# I. INTRODUCTION

In July 2017, a seller sold off its affiliate's corn seed business through a share purchase agreement. The share purchase agreement required the seller to indemnify the buyer for pre-closing litigation related to the business and certain third-party claims. After the sale, a series of legal disputes arose. The parties entered into a settlement agreement that included a mutual release of claims. Approximately two years later, the seller demanded that the buyer reimburse and indemnify it for certain third-party claims; those claims had been in litigation before the parties entered into the settlement agreement. The seller and its affiliate followed up their demand by filing a complaint against the buyer and buyer's affiliates in this action.

In sum, the seller argues that for the settlement agreement to "release" and "discharge" the buyer of its indemnification obligations under the share purchase agreement with respect to third-party claims, the buyer must reimburse the seller with respect to those claims. But the settlement agreement *does not provide* the seller such a right. Rather, the settlement agreement *removed* the buyer's right under the share purchase agreement to enforce its claims for indemnification *against* the seller. Given that the buyer is not seeking to enforce those obligations—and seller cannot enforce a right that *it* was not provided for in the later settlement agreement— the buyer's prayer for dismissal is **GRANTED.**

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. THE SHARE PURCHASE AGREEMENT

On July 10, 2017, The Dow Chemical Company ("Dow") and Dow AgroSciences Industrial LTDA ("Dow AgroSciences")[1] sold Dow AgroSciences Sementes & Biotecnologia Brasil Ltda. (the "Seed Business") to CITIC Agri Investment Co., Limited ("CITIC")[2] through the Share Purchase Agreement ("SPA").[3] As part of the sale, CITIC acquired the business's in-scope assets and liabilities.[4]

The SPA requires Dow to indemnify CITIC for Losses[5] arising from certain third-party claims and litigation related to the pre-closing operation of the Seed

---

[1] For ease of reference, the Court will refer to Dow and Dow AgroSciences as "Dow," unless specificity is required. *See also* Defendants' Opening Brief in Support of their Motion to Dismiss, Exhibit A ("SPA") (D.I. 25) § 12.6(c) ("All of the rights of Seller hereunder are enforceable by [The Dow Chemical Company] against [CITIC] and any of their Affiliates to the same extent as though [The Dow Chemical Company] were the Seller for purposes of enforcement of such rights. In connection with such enforcement, all references herein to Seller shall be deemed to include [The Dow Chemical Company].").

[2] CITIC was formerly known as China International Trust Investment Corporation. Complaint (D.I. 1) ¶ 25.

[3] Compl. ¶ 2; *see generally* SPA.

[4] *See* SPA Recitals; Compl. ¶ 3.

[5] "Losses" include "any and all losses, liabilities, obligations, damages, deficiencies, settlements, awards, judgments, assessments, penalties, offsets, claims, interest, payments, fines, costs and expenses or other charges of any kind, actually incurred, including reasonable attorneys' fees, costs of investigation and costs of enforcing any right to indemnification hereunder or pursuing any insurance providers; provided that Losses shall not include indirect, consequential, special, punitive or related losses and/or damages, except in the case of fraud or to the extent actually awarded to a third party." Ex. E to SPA at 65.

Business.  SPA Section 11.2 provides, in relevant part, that Dow:

> indemnify, defend and hold [CITIC] and any Affiliate thereof and their respective Representatives (each, a "<u>Buyer Indemnified Party</u>") harmless from and against any and all Losses incurred or sustained by, or imposed upon, such Buyer Indemnified Party resulting or arising from, related to, or incurred in connection with
>
>     \*      \*      \*
>
> (d) the management or operation of, or any fact, act or omission relating to the Company, the Business, In-Scope Assets and Liabilities, the Excluded Assets and Liabilities or the In-Scope Employees resulting from any act, fact or omission arising, occurring or incurred prior to and including the Closing Date. . . .[6]

Dow had the option to participate in, or assume, the defense of any "Third-Party Claims,"[7] as long as Dow indemnified CITIC for the claims.[8]  That option, however, did not extend to existing litigation at the time of closing; the SPA mandated that Dow "remain responsible for the defense of all existing lawsuits and administrative and judicial proceedings involving the [Seed Business] . . . and commenced before the Closing Date . . . and . . . bear the costs of such defenses."[9]

---

[6] *See* SPA § 11.2.

[7] "Third-Party Claims" include "the assertion of any claim, the commencement of any suit, action or proceeding, or the imposition of any penalty or assessment by a third party in respect of which indemnity may be sought under Section 11.1 or Section 11.2" of the SPA.  *Id*. § 11.4.1(a).

[8] *See id.* § 11.4.2(a)(i) ("The Indemnifying Party shall have the right, at its option, to participate in or, by giving written notice to the Indemnified Party, to elect to assume the defense of such Third Party Claim at the Indemnifying Party's own expense and by its own counsel, ***provided, that*** the Indemnifying Party shall indemnify and hold harmless the Indemnified Party against all losses, liabilities and reasonable costs incurred as a result of its defense of such Third Party Claim.") (italics and bold in original).

[9] *Id*. § 11.5(a).

Too, the SPA prescribes a contractual limitations period for indemnification claims. Section 11.6(a) of the SPA provides that CITIC's right to indemnification "shall apply only to those claims for indemnification . . . made on or before the respective dates set forth below. . . .:

> (ii) any claim for indemnification pursuant to . . . <u>Section 11.2(d)</u> . . . in each case except for claims relating to tax or labor Losses, shall be made on or before the date which is thirty-six (36) months after the Closing Date; and

> (iii) any claim for indemnification pursuant to . . . <u>Section 11.2(d)</u> . . . in each case for claims relating to tax or labor Losses, shall be made on or before the date that is thirty (30) days after the expiration of the applicable statute of limitations."[10]

The contractual limitations period, however, does not apply for "indemnification for Losses arising out of Existing Litigation."[11]

## B. THE SETTLEMENT AGREEMENT

After the sale of the Seed Business, Dow and CITIC became embroiled in a series of legal disputes.[12] On August 2, 2019, Dow, Dow Brasil Industria E Comercio De Produtos Quimicos, LTDA ("Dow Brasil"),[13] CITIC, LP High Tech Holding Ltda. ("LongPing_1"), Longping High-Tech Sementes & Biotecnologia

---

[10] *Id*. § 11.6(a)(ii)-(iii).

[11] *Id*. §11.6(b).

[12] Compl. ¶ 36.

[13] The Court will refer to Dow and Dow Brasil in reference to the Settlement Agreement as "Dow," unless specificity is required.

LTDA ("LongPing_2"), and Amazon Agri Biotech LUX S.a.r.1 ("Amazon Agri")

entered into a settlement agreement (the "Settlement Agreement.").[14]

The parties' current dispute centers on Section 3 of the Settlement Agreement.

Section 3 provides for the mutual release of claims between CITIC and Dow.

Specifically, Section 3(b) of the Settlement Agreement provides that CITIC (and

CITIC Group[15]):

> hereby irrevocably, fully, and forever release and discharge Dow and
> the Dow Group from any and all claims, causes of action, obligations,
> costs, expenses, interest, attorneys' fees, damages, and demands of
> whatever character, nature, or kind (whether fixed or contingent,
> anticipated or unanticipated, known or unknown, asserted or
> unasserted, past or present, suspected or unsuspected, accrued or
> unaccrued, vested or not vested, ripe or not ripe), based upon facts,
> circumstances, events, actions, or inactions occurring or existing, in
> whole or in part, prior to the date of this Settlement Agreement arising
> out of or relating to the Parties' Disputes, the divestment or sale of the
> DAS Corn Seed Business, the operation of the DAS Corn Seed
> Business, any "wrong pockets" issues, the Merger Control Agreement,
> the Share Purchase Agreement, Services Agreement, the Germplasm
> Agreement, or the Closing Memorandum….[16]

---

[14]  Compl. ¶ 37; Compl., Ex. 1 ("Settlement Agreement"). CITIC, LongPing_1, LongPing_2, and
Amazon Agri will collectively be referred to as "CITIC," and when necessary, the Court will
specifically refer to a party.

[15]  "CITIC Group" includes "CITIC's past, present, and future parents, agents, members,
affiliates, partnerships, joint ventures, trusts, organizations, successors, officers, directors,
employees, representatives, insurers, reinsurers, heirs, assignees, trustees, grantees, associates,
legal successors, agents, partners, representatives, and attorneys."  Settlement Agreement § 3(a).

[16]  *Id*. § 3(b).

SPA Section 3(b) carves out "any claims, causes of action, obligations, costs, expenses, interest, attorneys' fees, damages, and demands of whatever character that arise under this Settlement Agreement."[17]  SPA Section 3(d)(i) also provides that:

> [n]o Third Party Claim as to which a Party first receives notice after the date of this Settlement Agreement is released by the mutual releases above.  Nothing in this Settlement Agreement modifies or enlarges the Parties' respective indemnity right as to such Third Party Claims, if any.[18]

The Settlement Agreement, therefore, did not release or discharge claims to enforce the Settlement Agreement itself, nor Third-Party Claims as to which a party received notice after the Settlement Agreement.

## C. THIS LITIGATION

Dow provided CITIC quarterly reporting of third-party claims and costs since the sale.[19]  Around the end of 2019 or early 2020, Dow engaged in discussions with CITIC relating to tax claims against the Seed Business.[20]  Dow alleges discussions stalled as the COVID-19 pandemic hit.[21]

Approximately two years after the execution of the Settlement Agreement, on July 25, 2022, Dow sent CITIC formal notice of its tender of all third-party claims

---

[17]  *Id.*

[18]  *Id.* § 3(d)(i).

[19]  Compl. ¶ 52.

[20]  *Id.* ¶ 53.

[21]  *Id.* ¶ 55.

related to the Seed Business' pre-closing operations, a demand for reimbursement and indemnity, and request to resolve the dispute.[22] Those claims include:

(1) third-party claims known as of the date of the Settlement Agreement, August 2, 2019;

(2) third-party claims related to the Seed Business' operations, unknown on August 2, 2019, involving Losses, exclusive of tax or labor Losses, incurred thirty-six months after closing, *i.e.*, November 30, 2020; and

(3) third-party claims related to the Seed Business' operations, unknown on August 2, 2019, involving tax or labor Losses incurred after the applicable statute of limitations.[23]

Barely a week later, Dow and Dow Brasil ("Plaintiffs") initiated this action by filing a complaint against CITIC, LongPing_1, LongPing_2, and Amazon Agri ("Defendants"). Plaintiffs assert claims for breach of contract, implied covenant of good faith and fair dealing and seek declarations regarding the Settlement Agreement, and similar claims relating to the contractual limitations periods under the SPA.

Defendants have now moved to dismiss the Plaintiffs' complaint in its entirety.

## III. APPLICABLE LEGAL STANDARDS

When considering a motion under Rule 12(b)(6), the Court (i) accepts as true all well-pled factual allegations in the complaint, (ii) credits vague allegations if they

---

[22] *Id.* ¶ 56.

[23] *Id.* ¶ 59.

give the opposing party notice of the claim, and (iii) draws all reasonable inferences in favor of the plaintiffs.[24] The motion to dismiss will be denied "unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances."[25]

Delaware follows the "objective" theory of contracts; that is, the Court accords a contract's terms what would be an objective, reasonable third-party's interpretation thereof.[26] When determining the scope of a contractual obligation, and when measuring the parties' conduct against that obligation to determine breach, "'the role of a court is to effectuate the parties' intent.'"[27]

When the contract is clear and unambiguous, the Court follows the plain-meaning of the contract's terms and provisions.[28] A contract is ambiguous only if there are at least two differing, reasonable interpretations of it.[29] On a Rule 12(b)(6) motion, this Court "cannot choose between two differing reasonable interpretations of ambiguous provisions."[30] Indeed, dismissal is proper only if the defendant's

---

[24]   *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011).

[25]   *Id*.

[26]   *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) (citing *NBC Universal v. Paxson Commc'ns,* 2005 WL 1038997, at *5 (Del. Ch. Apr. 29, 2005)).

[27]   *Cygnus Opportunity Fund, LLC v. Washington Prime Grp., LLC*, 302 A.3d 430, 454 (Del. Ch. 2023) (quoting *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006)).

[28]   *Osborn*, 991 A.2d at 1159 (citing *Rhone–Poulenc Basic Chem. Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del.1992)).

[29]   *Twin City Fire Ins. Co. v. Delaware Racing Ass'n*, 840 A.2d 624, 628 (Del. 2003).

[30]   *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 615 (Del. 2003).

interpretation is the only reasonable interpretation.[31]

## IV. DISCUSSION

### A. CLAIMS UNDER THE SETTLEMENT AGREEMENT

Dow contends that "CITIC has not assumed responsibility for the third-party claims for which Dow's indemnity obligations have been released, discharged, and extinguished."[32]  Thus, Dow seeks to enforce the Settlement Agreement in a manner requiring that CITIC "assume" that responsibility[33]a—that is, "reimburse Dow" for its ongoing costs in the litigation of the Third-Party claims.[34]  Yet, Dow doesn't identify a single provision in the Settlement Agreement that specifically affords it a right of reimbursement.  Instead, Dow offers as support the *Merriam-Webster*'s definition of to "discharge," which means "to relieve of a charge, load, or burden."[35]

While dictionaries can help provide a meaning to a word or phrase, such a meaning cannot be credited with no consideration of its context.[36]  In the context of

---

[31]  *Id.*

[32]  Compl. ¶ 50.

[33]  *Id.*

[34]  *Id.* ¶ 58.

[35]  Ans. Br. at 18.

[36]  *See United States v. Costello*, 666 F.3d 1040, 1044 (7th Cir. 2012) ("Dictionary definitions are acontextual, whereas the meaning of sentences depends critically on context, including all sorts of background understandings."); *In re P3 Health Group Hldgs., LLC*, 282 A.3d 1054, (Del. Ch. 2022) ("The natural habitat of words is thus a larger text; words appear in phrases, in sentences, in paragraphs, and in entire provisions. Those provisions in turn appear within still-larger texts, such as a statute or contract. When interpreting those documents, a court cannot read words in isolation; the court must construe the document as a whole."); *Texas Pac. Land Corp. v. Horizon Kinetics*

the Settlement Agreement, CITIC agreed to "release and discharge" Dow of its indemnification obligations under the SPA for third-party claims noticed before the date of the Settlement Agreement.[37] Accordingly, CITIC released Dow of obligations that *CITIC* had the right to enforce against Dow; the release did not create some new affirmative right that *Dow* can now assert against CITIC.

In other words, the Settlement Agreement-created indemnification rights (or perhaps, more aptly, an express foregoing thereof) belong to CITIC. And while CITIC can no longer pursue indemnification *against* Dow for such third-party claims, the release does not now provide Dow a right of reimbursement for those or other third-party claims. If Dow had in fact bargained-for and secured such a right, it would have appeared plainly in the language of the release not via the creative read it suggests now.

So, Plaintiffs are not entitled to reimbursement or indemnification for third-party claims assumed prior to the Settlement Agreement.

Dow's claims for breach of the implied covenant good faith and fair dealing and request for declaratory judgment fare no better. A party may not use the implied

*LLC*, 2023 WL 8297050, at *19 (Del. Ch. Dec. 1, 2023) ("But dictionary definitions are not a be all and end all. Words appear in sentences, and their meaning depends on context.").

[37] Settlement Agreement § 3(d).

covenant of good faith and fair dealing to re-write a contract's terms.[38]  And if the contract addresses the conduct at issue, any implied covenant claim fails.[39]

The parties released indemnification claims prior to the Settlement Agreement.  They did not bargain for any right of reimbursement or indemnification for ongoing defense costs of third-party claims assumed prior to the Settlement Agreement.  Dow may not use the implied covenant to read into the release a right of reimbursement.

Because Dow fails to state a claim for breach of contract and the implied covenant of good faith and fair dealing, the Court also will deny its related request for declaratory judgment.

## B. CLAIMS UNDER THE SPA

Dow seeks a release of indemnification claims for losses incurred after the

---

[38]  *Cincinnati SMSA Ltd. P'ship v. Cincinnati Bell Cellular Sys. Co.,* 708 A.2d 989, 992 (Del. 1998) ("[I]t is not the proper role of a court to rewrite or supply omitted provisions to a written agreement."); *Winshall v. Viacom Int'l, Inc.,* 55 A.3d 629, 636–37 (Del. Ch. 2011), *aff'd*, 76 A.3d 808 (Del. 2013) ("[T]he implied covenant of good faith and fair dealing should not be applied to give plaintiffs contractual protections that they failed to secure for themselves at the bargaining table...[T]he implied covenant is not a license to rewrite contractual language. . . . Rather, a party may only invoke the protections of the covenant when it is clear from the underlying contract that the contracting parties would have agreed to proscribe the act later complained of had they thought to negotiate with respect to that matter.") (internal citations and quotations omitted)).

[39]  *Allen v. El Paso Pipeline GP Co.*, 113 A.3d 167, 183 (Del. Ch.), *judgment entered*, (Del. Ch. 2014), *aff'd*, 2015 WL 803053 (Del. Feb. 26, 2015) ("[T]he court decides whether the language of the contract expressly covers a particular issue, in which case the implied covenant will not apply, or whether the contract is silent on the subject, revealing a gap that the implied covenant might fill.  A court must determine whether a gap exists because '[t]he implied covenant will not infer language that contradicts a clear exercise of an express contractual right.'") (citation omitted).

contractual limitations period. Those claims include indemnification for third-party claims relating to the pre-closing operation of the Seed Business, as well as those relating to tax and labor Losses.

Section 11.6(a)(ii) of the SPA provides that:

> . . . (ii) any claim for indemnification pursuant to . . . Section 11.2(d) . . . in each case except for claims relating to tax or labor Losses, shall be made on or before the date which is thirty-six (36) months after the Closing Date.

Dow insists that CITIC's indemnification rights for Losses from third-party claims relating to the Seed Business, other than tax or labor Losses, expired after November 30, 2020.[40] That is, Dow contends that the contractual limitations period applies to the time *Losses are incurred*.[41] Dows seems to be treating the contractual limitations period as a sort of damages cut-off. Dow makes the same argument as to third-party claims relating to tax or labor Losses under Section 11.6(a)(iii).

Dow's interpretation of the contractual limitations periods is belied by the contract's plain language. SPA Section 11.6(a)(ii) and (iii) apply to *claims tendered*, not *Losses incurred*.[42] Both provisions provide that a claim "shall be made on or

---

[40]  Compl. ¶ 46.

[41]  *See* Ans. Br. at 21-22 ("Yet, the Losses at issue were incurred *after* the contractual limitations period expired so Dow cannot possibly be obligated to provide indemnity for such Losses. Stated differently, prior to the expiration of the contractual limitations periods, CITIC could not have properly tendered indemnity claims for *future* Losses, when the Losses were not incurred until after the limitations periods expired.") (italics in original).

[42]  SPA § 11.6(a)(ii) and (iii).

before" the given contractual limitations date.[43] The phrase "shall be made on or before" modifies *claim*—not *Losses*.[44]

Too, the implied covenant of good faith and fair dealing cannot be used to alter the contractual limitations period. Thus, the breach-of-contract claim and resort to the implied covenant of good faith and fair dealing fail.

Because the request for declaratory judgment is predicated on the faulty breach-of- contract claims, Dow is not entitled to the declaration sought.

Lastly, the claim for unjust enrichment is duplicative of the contractual and implied claims. If a contract governs and there is no "question about the effectiveness or application of the contract at issue,"[45] a claim of unjust enrichment cannot stand.[46]

Dow is not challenging the enforceability of the Settlement Agreement or SPA, and those contracts directly address the parties' relationship and conduct at issue. Accordingly, the Court will dismiss Plaintiffs' unjust enrichment claim.

---

[43]   *Id.*

[44]   The fact that the contractual limitations period in Section 11.6(a) does not apply to claims for indemnification for Losses arising out of the Existing Litigation does not change the outcome. *Id.* § 11.6(b). The parties may submit claims for indemnification for Losses arising out of Existing Litigation, separate and apart from when the Existing Litigation commenced.

[45]   *Encore Preakness, Inc. v. Chestnut Health & Rehab. Grp., Inc.,* 2017 WL 5068753, at *4 (Del. Super. Ct. Nov. 1, 2017) (citation omitted); *RCS Creditor Tr. v. Schorsch,* 2018 WL 1640169, at *7 (Del. Ch. Apr. 5, 2018).

[46]   *Metcap Sec. LLC v. Pearl Senior Care, Inc.,* 2009 WL 513756, at *5 (Del. Ch. Feb. 27, 2009), *aff'd*, 977 A.2d 899 (Del. 2009); *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).

## V. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED**.

**IT IS SO ORDERED.**

Paul R. Wallace, Judge